# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

FRANK NOTTE,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 24 MA 0038**

---

Criminal Appeal from the
Mahoning County Court #2 of Mahoning County, Ohio
Case No. 23 CRB 277

**BEFORE:**
Mark A. Hanni, Carol Ann Robb, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Gina DeGenova*, Mahoning County Prosecutor*, and *Atty. Edward A. Czopur*, Assistant Prosecuting Attorney, for Plaintiff-Appellee and

*Atty. Donald K. Pond*, for Defendant-Appellant.

Dated:  October 4, 2024

**HANNI, J.**

{¶1} Defendant-Appellant, Frank Notte, appeals from a Mahoning County Court #2 judgment convicting him of theft following a bench trial. Appellant argues his conviction was not supported by either the sufficiency of the evidence or the manifest weight of the evidence. We hold that Appellant's conviction is supported by sufficient evidence and is not against the manifest weight of the evidence.

{¶2} On March 13, 2023, Detective Richard Romeo of the Boardman Police Department received a theft report from a Sheetz convenience store and gas station. (Tr. 5). Sheetz provided Romeo with two still photographs taken from the store's closed-circuit television. (Tr. 5). One of the pictures captured the suspect and the other captured the vehicle he used to flee from the scene. (Tr. 5-6).

{¶3} Detective Romeo ran the license plate and learned that the owner of the vehicle was a female, and the other driver of the vehicle was usually the female's daughter. (Tr. 6). Youngstown Police had stopped the daughter several times. (Tr. 6). Further, on at least one prior occasion, the police had towed the vehicle. (Tr. 6). Appellant had signed for the tow release. (Tr. 6).

{¶4} Detective Romeo ran Appellant through LEADS and discovered that he was a white male with similar physical characteristics to those described by the theft reportee, Sheetz manager, Deborah Green. (Tr. 6). Detective Romeo also concluded that Appellant looked similar to the person in the still photograph sent to him by Sheetz. (Tr. 6).

{¶5} Detective Hughes of the Boardman Police Department prepared a six-pack photograph array and included Appellant's picture in the array. (Tr. 6). When the array of photographs was shown to Green, she selected Appellant's picture as the person who had committed the theft on March 13, 2023. (Tr. 6).

{¶6} Green testified that on March 13, 2023, around 11:22 A.M., she observed Appellant enter the beer cave located in the store, take beer, and proceed out the door. (Tr. 11). She followed Appellant out of the store and recorded the license plate number of the vehicle he entered and drove away in. (Tr. 11). Green testified that the store has a closed-circuit video surveillance system and it captured Appellant stealing the beer and

leaving the store without paying. (Tr. 11-14). The video was played for the trial court, and the court reviewed the video a second time following the testimony. (Tr. 11-13). Green also identified Appellant as the individual from the surveillance video and noted that although she did not know him, she recognized him because he had been in the store previously. (Tr. 19-21).

{¶7} Appellant testified he was not the person shown on the store's surveillance video, although he did admit to previously driving the car that was identified by its license plate number as being at Sheetz. (Tr. at 24). Appellant claimed that the person in the video was the car owner's boyfriend. (Tr. 24).

{¶8} The trial court found Appellant guilty. Specifically, the court made several findings of fact: (1) Appellant was identified as the individual stealing the beer by both Detective Romeo and Green, (2) Green was familiar with Appellant because he had visited the store previously, and (3) the court reviewed the video evidence submitted from the store security cameras.

{¶9} The trial court sentenced Appellant on March 5, 2024, to a jail term of 180 days, all of which were suspended. The court placed Appellant on 12 months of community control, assessed a $100 fine, ordered him to serve five days of community service, pay the costs of the case, and stay off Sheetz property.

{¶10} Appellant filed a timely notice of appeal on March 28, 2024, raising two assignments of error. Appellant addressed these assignments of error together since they raise corresponding issues of law and an overlapping application of facts.

{¶11} Appellant's first assignment of error states:

THE TRIAL COURT ERRED BY ENTERING A GUILTY VERDICT AGAINST DEFENDANT-APPELLANT FRANK NOTTE IN THE ABSENCE OF SUFFICIENT EVIDENCE, CONTRARY TO DUE PROCESS AND THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION.

{¶12} Appellant's second assignment of error states:

Case No. 24 MA 0038

THE TRIAL COURT ERRED BY ENTERING A GUILTY VERDICT AGAINST DEFENDANT-APPELLANT FRANK NOTTE. THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF EVIDENCE, CONTRARY TO DUE PROCESS AND THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION.

{¶13} Appellant cites the Fifth Amendment of the United States Constitution provision that no person shall be deprived of life, liberty, or property without due process of law and he notes that the due process clause is enforceable in Ohio through the Fourteenth Amendment. Further, Appellant cites *State v. Greeno*, 2021-Ohio-1372, ¶ 12 (4th Dist.), to support his contention that a conviction based on legally insufficient evidence constitutes a denial of due process.

{¶14} Appellant contends that the State failed to prove beyond a reasonable doubt that he was the one who committed the theft offense. Appellant first cites in his testimony that the only time he had possession of the vehicle was when he did a favor for the owner of the vehicle, a friend of his, by getting the vehicle out of impound. He contends that the vehicle owner's boyfriend, James Banks, was the person who committed the theft and drove away from Sheetz that day in the vehicle Green captured on video.

{¶15} Second, Appellant submits that Green saw the perpetrator face to face for only a couple of seconds, she did not know Appellant before this, and she was able to view the perpetrator's face only on the security monitor. Appellant highlights that viewing an individual for only a couple of seconds is insufficient to identify someone previously unknown.

{¶16} We have previously detailed the difference between a sufficiency of the evidence challenge and a manifest weight of the evidence challenge:

> A sufficiency of the evidence challenge tests the burden of production while a manifest weight challenge tests the burden of persuasion. *Thompkins* at 390 (Cook, J., concurring). Therefore, when reviewing a sufficiency challenge, the court does not evaluate witness

credibility. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 747 N.E.2d 216, ¶ 79.

*State v. Veon*, 2023-Ohio-3333, ¶ 11 (7th Dist.).

**{¶17}** Regarding sufficiency of the evidence, we have held that:

> Whether the evidence is legally sufficient to sustain a conviction is a question of law dealing with adequacy. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). An evaluation of witness credibility is not involved in a sufficiency review, as the question is whether the evidence is sufficient if taken as true. *State v. Yarbrough*, 95 Ohio St.3d 227, 767 N.E.2d 216, ¶ 79, 82 (2002); *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001). In other words, sufficiency involves the state's burden of production rather than its burden of persuasion. *Thompkins*, 78 Ohio St.3d at 390, 678 N.E.2d 541 (Cook, J., concurring). In reviewing the sufficiency of the evidence, the court views the evidence in the light most favorable to the prosecution to ascertain whether some rational juror could have found the elements of the offense proven beyond a reasonable doubt. *State v. Goff*, 82 Ohio St.3d 123, 138, 694 N.E.2d 916 (1998).

*State v. Anderson*, 2023-Ohio-945, ¶ 46 (7th Dist.).

**{¶18}** Appellant was convicted of theft in violation of R.C. 2913.02(A)(1), which provides: "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services . . . [w]ithout the consent of the owner or the person authorized to give consent." Appellant asserts that he was not the person who committed the theft.

**{¶19}** Reviewing the evidence in the light most favorable to the prosecution and assuming that the State's witnesses truthfully testified, sufficient evidence was presented to find that Appellant was the perpetrator of the theft. The State presented the testimony of Green and Detective Romeo, as well as the surveillance video and the still photographs. The State presented Green, who testified that Appellant was the individual she watched on the security camera take the beer and exit the store without paying. (Tr. 11). She selected Appellant's photo when asked to pick the perpetrator out of a six-pack

photograph array. (Tr. 6). She also recognized Appellant from his prior visits to Sheetz. (Tr. at 20). Appellant confirmed that he had patronized this Sheetz previously. (Tr. 25).

**{¶20}** The State additionally presented the testimony of Detective Romeo, who stated that he checked the license plate of the vehicle and discovered it was owned by two females. (Tr. 6). He also discovered that Appellant had previously signed a tow release for the vehicle. (Tr. 6). Appellant admitted that he did a favor for the owner of the vehicle by retrieving the vehicle from impound. (Tr. 24). Detective Romeo also opined that Appellant looked like the same person in the still photograph that was sent to him by Sheetz. (Tr. 6).

**{¶21}** In addition to the testimony, the trier of fact also viewed the security footage video and the still photographs. (Tr. 12).

**{¶22}** Although Appellant argues that Green could not make an accurate identification because she saw the perpetrator's face for only "a couple of seconds," the fact that Green recognized Appellant from prior visits could lead a rational trier of fact to conclude that "a couple of seconds" was more than enough time to make an accurate identification. As this Court has stated, when there are conflicting stories about the same event, either one of which, if believed, is sufficient evidence to prove or disprove guilt, appellate courts are not to determine which is more credible or believable. *State v. Gore*, 131 Ohio App.3d 197, 201 (7th Dist.1999). Rather, appellate courts are to defer to the trier of fact's judgment on those witnesses. *Id. at* 201.

**{¶23}** Thus, we conclude that sufficient evidence supports Appellant's theft conviction.

**{¶24}** Regarding the manifest weight of the evidence, we have held:

> Weight of the evidence concerns the effect of the evidence in inducing belief, and this review evaluates "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). The appellate court considers whether the state met its burden of persuasion (as opposed to the state's burden of production involved in a sufficiency review). *Id.* at 390 (Cook, J., concurring). When a defendant claims the conviction is contrary to the manifest weight of the

evidence the appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered. *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 220, citing *Thompkins*, 78 Ohio St.3d at 387.

Nevertheless, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 118, quoting *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The trier of fact occupies the best position from which to weigh the evidence and judge the witnesses' credibility by observing their gestures, voice inflections, and demeanor for signs of sincerity. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

*State v. Baker*, 2023-Ohio-2061, ¶ 13 (7th Dist.).

**{¶25}** We find that the trier of fact did not "lose its way" or "create such a manifest miscarriage of justice" that the conviction should be reversed, and a new trial ordered. We have held that "granting a new trial is only appropriate in extraordinary cases where the evidence weighs heavily against the conviction." *State v. Redman*, 2022-Ohio-4750 (7th Dist.), citing *State v. Martin*, 20 Ohio App.3d. 172, 175 (1st Dist. 1983). We have also noted that "[o]nly when 'it is patently apparent that the factfinder lost is way,' should an appellate court overturn the jury verdict." *Id.* ¶ 79, citing *Thompkins*, 78 Ohio St.3d. at 390, citing *State v. Woullard*, 2004-Ohio-3395 (2d Dist.).

**{¶26}** Here, Appellant claims it was not him who committed the theft and asserts that it was the vehicle owner's boyfriend. (Tr. 24-25). However, he refers only to his testimony that he was not the individual captured on the security footage stealing from the store.

**{¶27}** Similar to the case at hand, the appellant in *Redman* was the sole witness in her defense, *Id.* ¶ 81. This Court in *Redman* noted:

Appellant told a different version of the events than the other witnesses. Whether to believe appellant or to believe the other witnesses was a matter of credibility for the jurors to determine. Although an appellate court is permitted to independently weigh the credibility of the witnesses when determining whether a conviction is against the manifest weight of the evidence, we must give deference to the fact finder's determination of witnesses' credibility. *State v. Jackson*, 7th Dist. Jefferson No. 09-JE-13, 2009-Ohio-6407, 2009 WL 4548968, at ¶ 18. The policy underlying this presumption is that the trier of fact is in the best position to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

2022-Ohio-4750, ¶ 86.

**{¶28}** As set out above, there was ample evidence from Green and Detective Romeo establishing that Appellant was the individual who committed the theft from Sheetz. The trial court, as the fact finder, listened to each witness and was able to judge their credibility. We do not second-guess credibility determinations on appeal. Thus, we conclude that Appellant's conviction is supported by the manifest weight of the evidence.

**{¶29}** Accordingly, Appellant's first and second assignments of error lack merit and are overruled.

**{¶30}** For the reasons stated above, we affirm the trial court's judgment.

Robb, P.J., concurs.

Dickey, J., concurs.

Case No. 24 MA 0038

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Mahoning County Court #2 of Mahoning County, Ohio, is affirmed. Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

### NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**